IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 11, 2018

**CYNTOIA BROWN v. CAROLYN JORDAN**

**Rule 23 Certified Question of Law
from the United States Court of Appeals for the Sixth Circuit
No. 16-6738  Julia Smith Gibbons, Judge**

———————————————————

**No. M2018-01415-SC-R23-CO**

———————————————————

We accepted certification of a question of law from the United States Court of Appeals for the Sixth Circuit that requires us to determine if a defendant convicted of first-degree murder committed on or after July 1, 1995, and sentenced to life in prison under Tennessee Code Annotated section 39-13-202(c)(3) will become eligible for release, and if so, after how many years. We conclude that a defendant so convicted and sentenced to life in prison under Tennessee Code Annotated section 39-13-202(c)(3) may be released, at the earliest, after fifty-one years of imprisonment.

**Tenn. Sup. Ct. R. 23 Certified Question of Law**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY JJ., joined.

Charles Mark Pickrell and Charles W. Bone, Nashville, Tennessee, for the appellant, Cyntoia Brown.

John H. Bledsoe, Nashville, Tennessee, for the appellee, Carolyn Jordan.

**OPINION**

**I. Factual and Procedural Background**

The certified question of law at issue in this appeal arises from a lawsuit Cyntoia Brown brought in the United States District Court for the Middle District of Tennessee

("District Court") pursuant to United States Code title 28, section 2254 against Vicki Freeman, Warden.[1] In February 2005, then-sixteen-year-old Cyntoia Brown was charged with criminal offenses involving the 2004 shooting death of Johnny Allen. *State v. Brown*, No. M2007-00427-CCA-R3-CD, 2009 WL 1038275, at *3 (Tenn. Crim. App. Apr. 20, 2009), *perm. app. denied* (Tenn. Sept. 28, 2009). After a transfer hearing in juvenile court, Ms. Brown was transferred to criminal court, where her case was tried before a jury. *Id.* at n.3. The jury convicted her of premeditated first-degree murder, felony murder, and especially aggravated robbery. *Id.* at *12. The trial court merged the murder convictions and imposed a mandatory sentence of life imprisonment to run concurrently with a twenty-year sentence for especially aggravated robbery.[2] *Id.* at *12 n.6, *35. In its sentencing order, the trial court noted that Ms. Brown "must serve at least fifty-one (51) calendar years before she is eligible for release . . . ."[3]

Ms. Brown filed a timely petition for post-conviction relief, in which she claimed her life sentence was unconstitutional under *Miller v. Alabama,* 567 U.S. 460 (2012). The post-conviction court denied relief, and that decision was affirmed on appeal. *Brown v. State,* No. M2013-00825-CCA-R3-PC, 2014 WL 5780718 (Tenn. Crim. App, Nov. 6, 2014), *perm. app. denied* (Tenn. May 15, 2015).

Ms. Brown subsequently filed a petition for writ of habeas corpus under United States Code title 28, section 2254 in the District Court, in which she alleged, *inter alia,* that her mandatory minimum sentence of life imprisonment constitutes cruel and unusual punishment prohibited under *Miller v. Alabama.* The District Court denied relief, reasoning that *Miller* prohibits a mandatory sentence of life without the possibility of parole for juvenile offenders, and Ms. Brown received a life sentence, not a sentence of life without the possibility of parole. *Brown v. Freeman,* No. 3:15-cv-00712, 2016 WL

---

[1] Ms. Freeman is no longer the warden of the prison where Ms. Brown is confined. Carolyn Jordan was substituted as the respondent in the federal court proceedings upon her appointment as Warden. *See, e.g.*, Tenn. R. App. P. 19(c).

[2] The trial court initially sentenced the defendant to twenty years for especially aggravated robbery. Based on a discrepancy between the indictment and the judgment of conviction, the Court of Criminal Appeals modified the defendant's conviction to aggravated robbery and remanded the matter to the trial court for resentencing. On remand, the trial court sentenced the defendant to an eight-year sentence concurrent with the life sentence. *Brown v. State*, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *1 (Tenn. Crim. App. Nov. 6, 2014), *perm. app. denied* (Tenn. May 15, 2015).

[3] We take judicial notice of the court records and actions in earlier proceedings in this case. *See Nunley v. State,* 552 S.W.3d 800, 806 n.3 (Tenn. 2018).

8711705, at *8 (M.D. Tenn. Oct. 28, 2016). Ms. Brown's appeal from that decision is currently pending before the United States Court of Appeals for the Sixth Circuit, which certified the following question for this Court's consideration:

> Will a defendant convicted of first-degree murder committed on or after July 1, 1995, and sentenced to life in prison under Tennessee Code Annotated [section] 39-13-202(c)(3) become eligible for release and, if so, after how many years?

*Brown v. Jordan*, No. M2018-01415-SC-R23-CO (Tenn. Oct. 11, 2018) (order accepting certification).

## II. Standards of Review

Tennessee Supreme Court Rule 23, section 1 provides that

> [t]he Supreme Court may, at its discretion, answer questions of law certified to it by . . . a Court of Appeals of the United States . . . . This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

Further, the answers to these questions of law depend upon the interpretation of statutes; therefore, we apply the familiar rules of statutory construction. *Shorts v. Bartholomew*, 278 S.W.3d 268, 274 (Tenn. 2009). A court's overarching purpose in construing statutes is to ascertain and effectuate legislative intent without expanding a statute beyond its intended scope. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013). Words used in a statute "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). We endeavor to construe statutes in a reasonable manner that "avoids statutory conflict and provides for harmonious operation of the laws." *Baker*, 417 S.W.3d at 433 (internal quotations omitted). Where statutory language is ambiguous or a statutory conflict exists, we may consider and discern legislative intent from matters other than the statutory language, "such as the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statute, the caption of the act, and the legislative history of the statute." *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing

- 3 -

*Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013)). We presume that the General Assembly has knowledge of its prior enactments and knows the state of the law and the existence of other statutes relating to the same subject at the time it enacts new statutes. *Shorts*, 278 S.W.3d at 277 (citing *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 810 (Tenn. 1994)).

### III. Analysis

The certified question concerns the interpretation and application of the Tennessee sentencing statutes governing release eligibility of criminal defendants under Tennessee Code Annotated sections 40-35-501(h) and (i). Those sections currently provide:

> (h)(1) Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits. A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain sentence credits, but the credits shall not operate to make the defendant eligible for release prior to the service of twenty-five (25) full calendar years.
>
> > (2) There shall be no release eligibility for a defendant receiving a sentence of imprisonment for life without possibility of parole for first degree murder.
>
> (i)(1)  There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

(2) The offenses to which subdivision (i)(1) applies are:

(A) Murder in the first degree;
(B) Murder in the second degree;
(C) Especially aggravated kidnapping;
(D) Aggravated kidnapping;
(E) Especially aggravated robbery;
(F) Aggravated rape;
(G) Rape;
(H) Aggravated sexual battery;
(I) Rape of a child;
(J) Aggravated arson;
(K) Aggravated child abuse;
(L) Aggravated rape of a child;
(M) Sexual exploitation of a minor involving more than one hundred (100) images;
(N) Aggravated sexual exploitation of a minor involving more than twenty-five (25) images; or
(O) Especially aggravated sexual exploitation of a minor.

Tenn. Code Ann. § 40-35-501(h), (i).[4]

At first blush, it may appear that sections (h) and (i) are in conflict. Such a conclusion is not unreasonable, given the lack of clarity within the statute that could cause the subsections in question to be read as contradictory to each other. Indeed, the Tennessee Attorney General opined as much in a 1997 opinion when responding to a question about how to calculate the term of confinement for a defendant convicted of a first-degree murder committed on or after July 1, 1995. *See* Tenn. Att'y Gen. Op. 97-098, 1997 WL 449672 (July 1, 1997). While the Attorney General correctly opined that a defendant sentenced to life imprisonment for a first-degree murder committed on or after July 1, 1995, is eligible for release, at the earliest, after service of fifty-one years, the Attorney General incorrectly concluded that a conflict exists between sections (h) and (i). Further, to the extent our opinion in *Vaughn v. State*, 202 S.W.3d 106 (Tenn. 2006), endorsed the Attorney General's opinion that a conflict exists between these two provisions, that part of the opinion is abrogated.

---

[4] Section (i) was added in 1995 when the Tennessee General Assembly ratified 1995 Tenn. Pub. Acts, ch. 492, §§ 1,2.

Tennessee does not have indeterminate sentences for criminal offenses. Tennessee Code Annotated section 40-35-211 requires the imposition of a determinate sentence in all felony and misdemeanor cases.

> Specific sentences for a felony shall be for a term of years or months or life, if the defendant is sentenced to the department of correction. . . There are no indeterminate sentences. Sentences for all felonies and misdemeanors are determinate in nature, and the defendant is responsible for the entire sentence undiminished by sentence credits of any sort, except for credits authorized by . . . § 41-21-236.

Tenn. Code Ann. § 40-35-211(1). The determinate sentence for a life sentence is sixty years, as set forth in Tennessee Code Annotated section 40-35-501(h)(1). For a defendant convicted of a first-degree murder committed *before* July 1, 1995, the release eligibility occurs after service of sixty percent of sixty years less any sentence credits earned, but those sentence credits cannot operate to enable a defendant to become eligible for release until a minimum of twenty-five calendar years have been served. Tenn. Code Ann. § 40-35-501(h)(1).

When the General Assembly added subsection (i) in 1995, the minimum sentence a defendant must serve prior to becoming eligible for release was increased from sixty percent to one-hundred percent not only for those convicted of first-degree murder and given a life sentence but also for convictions of the other enumerated offenses listed in subsection (i)(2). The addition of subsection (i) to 40-35-501 did not alter the provision in section 40-35-501 setting forth the length of the determinate sentence. It merely altered the release eligibility for the sentence. Thus, first-degree murders committed either before or after July 1, 1995, carry the same determinate sentence length of sixty years. However, for first-degree murders committed *on or after* July 1, 1995, a defendant must serve one hundred percent of sixty years less any sentence credits received, but the sentence credits cannot operate to reduce the sentence imposed by more than fifteen percent. Tenn. Code Ann. § 40-35-501(i). Fifteen percent of sixty years is nine years, thus resulting in service of a minimum fifty-one-years. As such, a defendant who commits a first-degree murder on or after July 1, 1995, may be released, at the earliest, after service of fifty-one years.[5]

---

[5] It is important to note that a defendant convicted of a first- degree murder that occurred on or after July 1, 1995, will not necessarily become eligible for release after service of fifty-one years. A defendant's release will depend on the sentence credits a defendant receives under Tennessee Code

The Attorney General opined in 1997 that retention of subsection (h) created a conflict when subsection (i) was added because subsection (h) provides a twenty-five-year floor before a defendant sentenced to life for first-degree murder becomes eligible for release and subsection (i) raises that floor. Finding no way to reconcile the two provisions, the Attorney General opined that Tennessee Code Annotated section 40-35-501(h)(1) was repealed by implication by the enactment of Public Chapter 492, to the extent the two provisions conflict. As noted by the Attorney General, the legislative history indicates that the intent of subsection (i) was to increase the floor from sixty percent (as provided in subsection (h)) to one-hundred percent but to retain the sixty-year sentence for first-degree murder. *See* Tenn. Att'y Gen. Op. 97-098, 1997 WL 449672, at *2 (citing Special Report to the House Judiciary Comm., Tape # 1, May 3, 1995, at 672). The petitioner contends that the Attorney General's reasoning is flawed because under a proper statutory construction, the only possible way to read these two provisions together is to find that under the rule of specificity, subsection (h) controls as it applies to first-degree murder.

However, both interpretations are flawed. Subsection (h) was retained for two reasons. First, as noted in the Attorney General's opinion, subsection (h) sets forth the determinate sentence of sixty years for a life sentence, which was not changed by the addition of subsection (i). Second, because subsection (h) applies only to first-degree murders, for which there is no statute of limitation, the sentencing laws pertaining to release eligibility for a life sentence for a first-degree murder committed prior to July 1, 1995, by necessity, must remain in effect. Therefore, the release eligibility provisions of subsection (h) do not conflict with the release eligibility provisions of subsection (i)(1) but instead provide for a different release eligibility for first-degree murders (among other offenses) occurring on or after July 1, 1995. This interpretation gives effect to the legislative intent without broadening the statute beyond its intended scope and allows all provisions to be given fair import to their terms in a way that promotes justice and effectuates the objectives of the criminal code.

Indeed, we indicated as much in *Vaughn*. In that case, the Court considered whether defense counsel were ineffective for failing to object to erroneous jury instructions regarding their clients' change in release eligibility under Tennessee Code Annotated section 40-35-501(i). *Vaughn*, 202 S.W.3d at 116-20. The defendants in that case committed a first-degree murder on July 2, 1995, the day after the effective date of

---

Annotated section 41-21-236 or other applicable law governing sentence credits. Tenn. Code Ann. § 40-35-501(i).

subsection (i). *Id.* at 110, 118. Counsel, unaware of the changes to release eligibility for first-degree murder, failed to challenge jury instructions that stated the defendants' release eligibility for a life sentence was twenty-five years pursuant to subsection (h) rather than fifty-one years pursuant to subsection (i). *Id.* at 110, 119. To reach the merits of the ineffective assistance of counsel claim, the Court discussed the underlying issue – that is, what was the release eligibility for a first-degree murder committed on or after July 1, 1995. *Id.* at 118. The Court referenced the Attorney General's 1997 opinion and the potential conflict between subsections (h) and (i) and seemed to agree that a conflict existed between the two in that "it was not expressly stated that section (h) would no longer apply to a person committing an offense on or after July 1, 1995." *Id.* at 118-19. In resolving that conflict, the Court stated, "As for the conflict in the statutes, well-settled principles of statutory construction make it clear that the most recently enacted statute repeals by implication any irreconcilable provisions of the former act." *Id.* at 118 (citing *Tennessee Carolina Transp., Inc. v. Pentecost,* 362 S.W.2d 461, 463 (1962)). Relevant to the question at issue here, the Court observed that "[t]he passage of section 40-35-501(i) did not repeal section (h), as (h) still applies to a person committing an offense before July 1, 1995." *Vaughn,* 202 S.W.3d at 118.

To the extent *Vaughn* affirms the Attorney General's opinion that an irreconcilable conflict exists between subsections (h) and (i), that portion of the opinion is abrogated. As we have determined, no conflict exists between these statutory provisions. Both subsections remain in full effect and are not irreconcilable; therefore, no part of subsection (h) is repealed by implication. *Vaughn*, however, correctly held that a defendant convicted of first-degree murder committed on or after July 1, 1995, may be released after serving at least fifty-one years in confinement. *Vaughn,* 202 S.W.3d at 117.

## IV. Conclusion

A defendant convicted of first-degree murder that occurred on or after July 1, 1995, may be released after service of at least fifty-one years if the defendant earns the maximum allowable sentence reduction credits. The Clerk shall transmit this opinion to the United States Court of Appeals for the Sixth Circuit and to the parties in accordance with Rule 23, section 8 of the Rules of the Tennessee Supreme Court. Costs in this Court are taxed to the respondent, Carolyn Jordan.

_____
ROGER A. PAGE, JUSTICE